IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENDRICK LEE ROBBINS,<br>No. 15515-041,<br><br>    Petitioner,<br><br>vs.<br><br>ERIC WILLIAMS,<br>Warden, FCI-Greenville,<br><br>    Respondent. | )<br>)<br>)<br>)<br>)<br>) Case No. 18-cv-145-NJR<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

  Petitioner Kendrick Lee Robbins, an inmate in the Bureau of Prisons, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, raising *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016), to challenge the enhancement of his sentence as an armed career offender pursuant to 18 U.S.C. § 924(e). (Doc. 1). Robbins is serving a 180-month sentence imposed in June 2011 by the District of Minnesota after he pled guilty to possession of a firearm as a felon. *United States v. Robbins*, Case No. 10-cr-310 (D. Minn.) (criminal case).

  The Court denied Respondent's Motion to Dismiss the Petition in December 2018. (Doc. 26). Respondent subsequently answered (Doc. 34), and Robbins replied. (Doc. 38). On August 5, 2019, Robbins supplemented his original pleading to add a claim pursuant to *Rehaif v. United States*, 588 U.S. __, 139 S. Ct. 2191 (2019). (Docs. 39, 40). Respondent filed a supplemental response to that claim (Doc. 46), and Robbins replied. (Doc. 54).

### RELEVANT FACTS AND PROCEDURAL HISTORY

  Before his felon-in-possession conviction, Robbins had been convicted of a drug trafficking offense in New Mexico in 2009 (Doc. 13-3), and of 4th-degree aiding and abetting assault in Minnesota

1

in 1996 (Case No. K9-95-000988 in Sherburne County; Doc. 13-2). These convictions (as well as a third not at issue here)[1] were relied upon to apply the Armed Career Criminal Act ("ACCA") enhancement in 18 U.S.C. § 924(e) for a person having at least three prior convictions for a "violent felony" or "serious drug offense." In his plea agreement, both Robbins and the prosecution agreed that the armed career criminal enhancement applied, thus raising the minimum prison term to 15 years (180 months) – as opposed to a 10-year maximum without the enhancement. 18 U.S.C. §§ 924(a)(2), 924(e) (2010); (Doc. 12-1, pp. 1-2; Doc. 13, pp. 2-3). The parties disagreed on whether Robbins's total offense level would be 30 or 31 but agreed his criminal history category was VI, yielding an advisory sentencing guideline range of either 180-210 months or 188-235 months, depending on the offense level. (Doc. 12-1, p. 2).

Robbins did not file a direct appeal. In 2016, he filed a 28 U.S.C. § 2255 motion challenging his enhanced sentence, arguing that his New Mexico drug offense did not qualify as a "serious drug offense" under § 924(e)(2)(A)(ii), because the applicable penalty was only 9 years, while Section 924(e) requires a predicate drug offense to carry a maximum sentence of at least 10 years. *United States v. Robbins*, Case No. 16-cv-1855 (D. Minn.) (Doc. 63 in criminal case);[2] 18 U.S.C. § 924(e)(2)(A)(ii). The Section 2255 motion was denied as untimely, and the district court further found Robbins's argument that the drug offense maximum was below the required 10 years to be without merit. (Doc. 63, pp. 5-7, in criminal case).

In the present habeas Petition, Robbins revived the claim that the New Mexico drug statute under which he was convicted carried a maximum penalty of 9 years. This Court rejected that argument in the Order denying Respondent's Motion to Dismiss but ordered a response to the *Mathis* claim.

---

[1] Robbins does not challenge the use of his 1995 conviction for Assault 1st Degree and Assault 2nd Degree in Hennepin County, Minnesota, Case No. 94-067493 (Doc. 13-1), as a predicate "violent felony" for enhancement purposes. (Doc. 1-1, pp. 2, 4, 9-11; Doc. 13, p. 3).
[2] All documents relating to the Section 2255 proceeding are docketed in Robbins's criminal case, No. 10-cr-310 (D. Minn.).

(Doc. 26, pp. 4-6).

    Robbins now seeks habeas relief on the following grounds:

(1)     Under *Mathis*, Robbins's 2009 New Mexico conviction for possession with intent to distribute cocaine is no longer a "serious drug offense" for ACCA-enhancement purposes, because:

    (a)     the New Mexico statute is broader than the generic federal statute because it allows a conviction for a mere "offer to sell" and defines "distribute" more broadly than does federal law (Doc. 1, pp. 6-7; Doc. 1-1, pp. 4-9; Doc. 24, pp. 13-14);

    (b)     the New Mexico statute is overbroad because its analog element includes substances not listed in the federal statute (Doc. 24, pp. 19-21); and

    (c)     the "person" element in the New Mexico statute is overbroad (Doc. 24, pp. 13-14);

(2)     Robbins's plea of "nolo contendere" to the New Mexico offense meant that he never admitted to all its essential elements, undermining the use of this conviction as a predicate for the sentence enhancement (Doc. 24, pp. 15-17);

(3)     Under *Mathis*, Robbins's 1996 Minnesota 4th-degree aiding and abetting assault conviction no longer qualifies as a "violent felony" (Doc. 1, p. 7; Doc. 1-1, pp. 9-11);

(4)     Under *Rehaif v. United States*, Robbins is actually innocent of violating 18 U.S.C. § 922(g) because the government did not allege or prove he had knowledge of his convicted-felon status when he possessed the firearm. (Doc. 39, pp. 3-5).

Respondent maintains that the assault conviction remains a "violent felony" under the elements clause of Section 924(e)(2)(B)(1), and *Mathis* is inapplicable (Doc. 13, pp. 13-16; Doc. 34, pp. 9-17); the trafficking conviction still qualifies as a "serious drug offense" and Robbins's claim does not truly rely on *Mathis* (Doc. 34, pp. 17-32); and the *Rehaif* claim fails because Robbins cannot show his conviction amounted to a "miscarriage of justice." (Doc. 46, pp. 17-21). Respondent also seeks to preserve the argument that because Robbins brought a Section 2255 motion earlier, he cannot now use

3

the "savings clause" to mount another collateral attack using Section 2241.[3] (Doc. 46, pp. 5-14).

## APPLICABLE LEGAL STANDARDS

Generally, petitions for writ of habeas corpus under 28 U.S.C. § 2241 may not be used to raise claims of legal error in conviction or sentencing but are instead limited to challenges regarding the execution of a sentence. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998). Thus, aside from the direct appeal process, a prisoner who has been convicted in federal court is generally limited to challenging his conviction and sentence by bringing a motion pursuant to 28 U.S.C. § 2255 in the court which sentenced him. A Section 2255 motion is ordinarily the "exclusive means for a federal prisoner to attack his conviction." *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). A prisoner is also normally limited to only *one* challenge of his conviction and sentence under Section 2255. He or she may not file a "second or successive" Section 2255 motion unless a panel of the appropriate court of appeals certifies that such motion contains either (1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

Under very limited circumstances, however, it is possible for a prisoner to challenge his federal conviction or sentence under Section 2241. Specifically, 28 U.S.C. § 2255(e) contains a "savings clause" which authorizes a federal prisoner to file a Section 2241 petition where the remedy under Section 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). *See Hill v. Werlinger*, 695 F.3d 644, 648 (7th Cir. 2012) ("'Inadequate or ineffective' means that 'a legal theory that could not have been presented under § 2255 establishes the petitioner's actual innocence.'") (citing *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002); *see also United States v. Prevatte*, 300 F.3d 792, 798–99 (7th Cir. 2002). The Seventh Circuit construed the savings clause in

---

[3] Because, as Respondent acknowledges, this argument is contrary to binding Seventh Circuit precedent, the Court finds it unnecessary to address it.

4

*In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998): "A procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." In other words, "there must be some kind of structural problem with section 2255 before section 2241 becomes available." *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).

Following *Davenport* and its progeny, the Seventh Circuit has developed a three-part test for determining whether Section 2255 is inadequate or ineffective so as to trigger the savings clause:

• Step #1: the federal prisoner must seek relief based on a decision of statutory interpretation (as opposed to a decision of constitutional interpretation, which the inmate could raise in a second or successive § 2255 motion);

• Step #2: the statutory rule of law in question must apply retroactively to cases on collateral review *and* could not have been invoked in a first § 2255 motion; and

• Step #3: a failure to afford the prisoner collateral relief would amount to an error "grave enough" to constitute "a miscarriage of justice."

*Worman v. Entzel*, 953 F.3d 1004, 1008 (7th Cir. 2020) (emphasis in original) (citing *Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016); *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019)). *See also Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019); *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013).

## ANALYSIS

### I. *Mathis* Claims

A claim that relies on *Mathis v. United States* satisfies the first *Davenport* condition, as *Mathis* is a statutory-interpretation case. *See Holt v. United States*, 843 F.3d 720, 722 (7th Cir. 2016); *Dawkins v. United States*, 829 F.3d 549, 550-51 (7th Cir. 2016).

As to the second element, Respondent concedes that *Mathis* is retroactively applicable on collateral review. (Doc. 13, p. 8). He argues, however, that the analysis set forth in *Mathis* is inapplicable to Robbins's argument regarding his Minnesota assault conviction, and that Robbins does not truly rely on *Mathis* in contesting the enhancement based on his New Mexico drug offense and

could have raised his arguments even before *Mathis* based on earlier precedent. (Doc. 34, pp. 9-21).

Robbins could not have invoked the 2016 *Mathis* decision in a timely initial Section 2255 motion, which he would have been required to file before June 24, 2012. (Criminal case, Doc. 63, p. 3). But this is not dispositive of whether Robbins has satisfied the second Davenport condition. "*Davenport*'s second condition has two components: retroactivity and prior unavailability of the challenge." *Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016). Setting aside the question of whether a *Mathis*-based challenge was previously unavailable to Robbins, the Court concludes that his arguments fail on the merits, even if the *Mathis* analysis is applied.

The Court in *Mathis* resolved a split among the circuits as to when a court may consult state charging or sentencing documents (known as the "modified categorical approach") to determine whether a previous conviction, under an alternatively-phrased statute, may qualify as a career-criminal predicate offense.[4] *See Chazen*, 938 F.3d at 857-59. *See also Shepard v. United States*, 544 U.S. 13, 26 (2005) (limiting the case documents which may be consulted by a court when comparing non-generic statute of conviction to generic offense). *Mathis* clarified that only if a statute is "divisible"—that is, it sets forth one or more *elements* of the offense in the alternative, each of which amounts to a distinct offense—may the modified categorical analysis be used to determine which of the alternatives formed the basis of the conviction in question, and whether the elements of that crime match the elements of the generic offense. Thus, if an "indivisible" statute lists alternative factual means to satisfy

---

[4] The *Mathis* Court addressed the question of whether an Iowa burglary conviction was properly used to enhance a federal felon-in-possession sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. §§ 924(e)(1) and (e)(2)(B)(ii), and held that only where the elements of the predicate offense match or are narrower than the elements of the "generic" offense (in Mathis's case, generic burglary) may the prior conviction be used as the basis for enhancing a federal sentence. *Mathis*, 136 S. Ct. at 2247. The Iowa statute in question identified several alternative locations where the burglary may take place, including a "building, structure, . . . land, water, or air vehicle." *Id.* at 2250. The Court noted that the statute was "indivisible," describing a single crime with several possible modes, or "means" of commission, and found that because the generic offense of burglary is limited to unlawful entry into a "building or other structure" with intent to commit a crime, the Iowa statute was overbroad. *Mathis*, 136 S. Ct. at 2248, 2250 (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990)). As such, the Court concluded that the ACCA enhancement based on the Iowa conviction could not stand, even though the records in Mathis's Iowa case contained facts showing that his actual offense conduct matched the elements of generic burglary.

6

a single element, and if the alternative means include conduct that sweeps more broadly than the generic crime, then a conviction under the statute may not be used as a career-offender predicate offense, even if the particular defendant's conduct fell within the scope of the generic offense. *Mathis*, 136 S. Ct. at 2252 (sentencing court "cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense"); *Van Cannon v. United States*, 890 F.3d 656, 663 (7th Cir. 2018) ("the modified categorical approach has no role to play" if the statute is indivisible).

Under the ACCA, a person convicted of violating 18 U.S.C. § 922(g) who has three previous convictions for a "violent felony" or a "serious drug offense" faces a minimum 15-year sentence. 18 U.S.C. § 924(e)(1). The statute defines "serious drug offense" in pertinent part as:

> **(ii)** an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]

18 U.S.C. § 924(e)(2)(A)(ii).

"The term "violent felony" means any crime punishable by imprisonment for a term exceeding one year … that—"

> **(i)** has as an element the use, attempted use, or threatened use of physical force against the person of another;[5] or
> **(ii)** is burglary, arson, or extortion, involves use of explosives[.][6]

18 U.S.C. § 924(e)(2)(B).

### *New Mexico Drug Trafficking Conviction*

Robbins was convicted in 2009 of Trafficking in a Controlled Substance (by possession with intent to distribute, 1st offense), in violation of N.M.S.A. § 30-31-20(A)(3) & (B)(1) (1978). (Doc. 13-

---

[5] This subsection of the statute is known as the "elements clause" or the "force clause."
[6] The "residual clause" in Section 924(e)(2)(B)(ii) added that a "violent felony" includes a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." That language was held to be unconstitutionally vague in *Johnson v. United States*, 135 S. Ct. 2551 (2015).

3, pp. 1-2, 5, 10-11; Colfax County, New Mexico Case No. 09-4-CR). The statute provides, in relevant part:

> A. As used in the Controlled Substances Act, "traffic" means the:
> …
>     (3) possession with intent to distribute:
>         (a) a controlled substance enumerated in Schedule I or II that is a narcotic drug;
>         (b) controlled substance analog of a controlled substance enumerated in Schedule I or II that is a narcotic drug; or
>         (c) methamphetamine, its salts, isomers and salts of isomers.
> B. Except as authorized by the Controlled Substances Act, it is unlawful for a person to intentionally traffic. A person who violates this subsection is:
>
>     (1) for the first offense, guilty of a second degree felony …

N.M.S.A. § 30-31-20 (1978). (The New Mexico Schedules I and II are found at N.M.S.A. 30-31-6 and 30-31-7, respectively).

Robbins raises a number of challenges to the use of this conviction to enhance his sentence under the ACCA. First, his claim that by pleading "nolo contendere" to the charge, he did not admit to all of its essential elements, is a non-starter. (Doc. 24, pp. 15-17; Doc. 38, p. 17). Respondent correctly points out that the plain language of the ACCA requires only that a defendant has three *previous convictions* for a "serious drug offense" or violent felony. 18 U.S.C. § 924(e)(1); (Doc. 34, pp. 27-29). The statute does not differentiate between convictions resulting from a jury trial, bench trial, guilty plea, or plea of nolo contendere. Robbins's nolo plea had the same legal effect as a guilty plea, as it resulted in his conviction on the trafficking charge. (Doc. 13-3, pp. 10-11); *see United States v. Cartwright*, 678 F.3d 907, 915-16 (10th Cir. 2012) (Oklahoma conviction based on nolo contendere plea, which admits the validity of the charge, was a "previous conviction" for ACCA enhancement purposes); *Rose v. Uniroyal Goodrich Tire Co.*, 219 F.3d 1216, 1220 (10th Cir. 2000) (while not a factual admission to the crime, "plea of nolo contendere has the same legal effect as a guilty plea"); *Kipnis v. Jusbasche*, 388 P.3d 654, 658 (N.M. 2016) (same).

Likewise, Robbins's claim that the "person" element in the New Mexico statute is overbroad,

8

and thus invalidates the use of his drug conviction as a predicate, is unconvincing. (Doc. 24, pp. 13-14; Doc. 38, pp. 14-16). The only relevant comparison between the New Mexico trafficking statute and the federal statute is to the definition of a "serious drug offense" set forth in 18 U.S.C. § 924(e)(2)(A)(ii), which does not explicitly include a "person" element. The *Mathis* analysis involves comparison of the elements of the statutes to determine whether a particular conviction may be counted as a sentence-enhancing predicate. And, as Respondent points out, a "person" is not an element which in New Mexico must be proven beyond a reasonable doubt to sustain a conviction. N.M.R.A., Crim. UJI 14-3111;[7] (Doc. 34, pp. 22, 24).

Robbins's argument that the New Mexico statute criminalizes a mere "offer to sell" and defines "distribution" in an overbroad manner similarly fails. The case he cites[8] does not demonstrate that New Mexico law would allow a conviction for simply offering to sell a controlled substance, without more. (Doc. 1-1, pp. 6-8; Doc. 24, p. 14; Doc. 38, p. 16). As relevant to Robbins's conviction, the statute requires possession of a drug coupled with the intent to distribute it. N.M.S.A. § 30-31-20(A)(3). Other sections of the statute define "traffic" to mean the "manufacture" or the "distribution, sale, barter or giving away of" a controlled substance. N.M.S.A. § 30-31-20(A)(1) & (2). By its terms, the statute does not make it illegal to offer a drug for sale in the absence of the required element that the defendant possessed the drug.

Robbins argues that the New Mexico statutory definition of "deliver" or "distribute" is overbroad, because the state statute criminalizes distribution of a controlled substance or "controlled substance analog," while the 21 U.S.C. § 802(8) and (11) definitions refer to delivery of a controlled

---

[7] New Mexico's jury instructions require the State to prove that: 1. The defendant had [a controlled substance] in his possession; 2. The defendant knew it was [a controlled substance] …; 3. The defendant intended to transfer it to another; [and] 4. This happened in New Mexico on or about the [date]. N.M.R.A. Crim. UJI 14-3111.

[8] Contrary to Robbins's argument, the New Mexico defendant in *Gutierrez v. Moriarty*, 922 F.2d 595 (10th Cir. 1992) (unpublished), was not convicted of trafficking based merely on an offer to sell drugs. He admitted to an undercover officer that he had heroin with him and offered to sell it, then swallowed a cellophane package when he was told he was under arrest. He later entered an *Alford* plea to trafficking. An offer to sell can, of course, be evidence proving an intent to distribute.

substance or a "listed chemical" and do not include controlled substance analogs. (Doc. 24, pp. 21-22; Doc. 38, pp. 18-22); N.M.S.A. § 30-31-2(J) & (G).[9] This argument is unconvincing.

While the general definition of "controlled substance analog" in N.M.S.A. § 30-31-2 includes analogs of substances in Schedules I-V, that definition is narrowed considerably in the trafficking statute under which Robbins was charged. There, a controlled substance analog is limited to that "of a controlled substance enumerated in Schedule I or II that is a narcotic drug." N.M.S.A. § 30-31-20(A)(3)(b). As such, analogs of substances in Schedules III-V are excluded, as are any analogs of substances in Schedule I or II that are not also "narcotic drugs." The controlled substance analogs covered in the New Mexico trafficking statute represent a narrower group of substances than are included in the federal definition of "controlled substance analogue" in 21 U.S.C. § 802(32)(A). The federal definition includes analogues that have "a stimulant, depressant, or hallucinogenic effect on the central nervous system" similar to Schedule I or II drugs – which is clearly broader than "narcotic drugs." *See* 21 U.S.C. § 802(32)(A). This aspect of Robbins's overbreadth argument thus misses the mark and does not entitle him to habeas relief.

Robbins further argues the New Mexico statute is overbroad because it includes the chemical class "arylcycloalkylamines," which he claims is not found anywhere in the federal definition of controlled substance analogs. (Doc. 24, pp. 20-21; Doc. 38, pp. 18-19). Robbins does not identify the specific portion of the New Mexico statute that includes arylcycloalkylamines. It is found under the general New Mexico definition of "controlled substance analog" (*see* note 9 above), which states,

---

[9] N.M.S.A. § 30-31-2(G) provides: "'deliver' means the actual, constructive or attempted transfer from one person to another of a controlled substance or controlled substance analog, whether or not there is an agency relationship;" and N.M.S.A. § 30-31-2(J) states: "'distribute' mans to deliver other than by administering or dispensing a controlled substance or controlled substance analog[.]" "Controlled substance analog" was defined at the time of Robbins's conviction in 2009 at N.M.S.A. § 30-31-2(W), as "a substance other than a controlled substance that has a chemical structure substantially similar to that of a controlled substance in Schedule I, II, III, IV, or V or that was specifically designed to produce effects substantially similar to that of controlled substances in Schedule I, II, III, IV, or V." (later amendments re-designated this section as N.M.S.A. § 30-31-2(X)).

10

"Examples of chemical classes in which controlled substance analogs are found include the following: (1) phenethylamines; … (7) arylcycloalkylamines." N.M.S.A. 30-31-2(W) (2009). As already explained, this general definition is narrowed in the trafficking statute, which includes only analogs of narcotic drugs that appear in Schedule I or II. As such, the inclusion of arylcycloalkylamines as one possible example of a controlled substance analog in N.M.S.A. 30-31-2(W) does not render the trafficking statute at N.M.S.A. 30-31-20(A) overbroad. This argument therefore has no merit.

None of the claims set forth by Robbins to challenge the sentence enhancement based on his 2009 New Mexico drug trafficking conviction are convincing. The sentencing court properly counted this prior conviction as a "serious drug offense" within the meaning of 18 U.S.C. § 924(e)(2)(A)(ii).

### *Minnesota 4th Degree Aiding & Abetting Assault Conviction*

Robbins's challenge to the use of this conviction to enhance his felon-in-possession sentence fails on the merits. He argues that in order for a "violent felony" conviction to satisfy the "elements clause" (18 U.S.C. § 924(e)(2)(B)(i)), the force must be violent and capable of causing physical pain or injury – and the Minnesota aiding and abetting assault statute does not require this. (Doc. 1-1, pp. 9-11); citing *Johnson v. United States*, 559 U.S. 133, 140-41 (2010); (*see also* Doc. 24, pp. 9-13; Doc. 38, pp. 5-10). Robbins further asserts that Minn. Stat. § 609.2231, Subd. 3, which criminalizes assault on a correctional employee engaged in the performance of a duty, is divisible into two separate crimes. (Doc. 24, pp. 11-12; *see also* Doc. 34, pp. 13-14). This may be true as to the current version of Section 609.2231, Subd. 3, which now contains subsection (1), criminalizing an assault that "inflicts demonstrable bodily harm," and subsection (2), for intentionally throwing or otherwise transferring bodily fluids or feces at or onto the employee.

Nonetheless, the potential divisibility of the current 4th degree assault statute is immaterial to Robbins's conviction. He was charged and convicted under the version in effect in 1995, which did not contain subsection (2). (Doc. 13-2). As the Eighth Circuit noted:

> Minn. Stat. § 609.2231, subd. 3 (1994), prohibited only one kind of behavior, an assault

11

> of a correctional officer engaged in the performance of his duties that inflicted demonstrable bodily harm. As that is a single crime, the elements of which fall within the definition of a violent felony in § 924(e)(2)(B)(i), all convictions for violating the statute are predicate violent felonies under the categorical approach mandated by *Taylor* and by later Supreme Court cases applying *Taylor*. … We note that Section 6090.2231, subd. 3, was amended in 1997 … to proscribe two kinds of acts against a correctional employee – (1) an assault that inflicts demonstrable bodily harm, and (2) intentionally throwing bodily fluids or feces at the employee.

*United States v. Salean*, 583 F.3d 1059, 1061 (8th Cir. 2009).

When Robbins was charged with 4th degree aiding and abetting assault, the statute had not yet been amended to include subsection (2). Thus Robbins was convicted in January 1996 of the attempt to inflict demonstrable bodily harm. (Doc. 13-2, pp. 2, 7). The Eighth Circuit's finding in *Salean* that the elements of Section 609.2231, Subd. 3, fell within the Section 924(e)(2)(B)(i) definition of a "violent felony" at the time of Robbins's conviction is dispositive of this issue. *See also United States v. Lindsey*, 827 F.3d 733, 740 (8th Cir. 2016) (holding that second-degree assault under Minn. Stat. § 609.222 qualifies as a violent felony for ACCA purposes, even though the act of assault might not involve "violent physical force"). *Mathis* is immaterial to the analysis because the statute contained no alternatives at the relevant time which might have made it divisible.

Robbins's statute of conviction proscribed an assault that "inflicts demonstrable bodily harm" and thus it "ha[d] as an element the use, attempted use, or threatened use of physical force against the person of another." Minn. Stat. § 609.222, subd. 3 (1995); 18 U.S.C. § 924(e)(2)(B)(i). Therefore, his Minnesota 4th degree aiding and abetting assault conviction was properly counted as a "violent felony" for the ACCA enhancement.

## II. *Rehaif* Claim

On June 21, 2019, the Supreme Court held in *Rehaif*:

> [I]n a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm. We express no view, however, about what precisely the Government must prove to establish a defendant's knowledge of status in respect to other § 922(g) provisions not at issue here.

*Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019) (defendant's conviction for illegal possession of firearm and ammunition was based on his status of being illegally or unlawfully in the United States; reversing/remanding because the Government had not been required to prove at trial that defendant knew he was unlawfully in the country). The opinion abrogated nationwide precedent in all eleven circuit courts of appeal which had held that knowledge was not an element that the prosecution must prove to obtain a conviction.

Revisiting the *Davenport* conditions which must be satisfied in order to challenge a conviction or sentence via the "savings clause," Respondent concedes that Robbins's *Rehaif* claim meets the first two requirements. (Doc. 46, pp. 15-17). *Rehaif* is a statutory interpretation case, and it sets forth a new substantive rule narrowing the scope of Section 922(g) which should have retroactive application. Further, under current Seventh Circuit savings clause jurisprudence, Robbins could not have raised his *Rehaif*-based argument because it would have been futile to do so in the Eighth Circuit under pre-*Rehaif* precedent. Respondent maintains, however, that Robbins cannot satisfy the third *Davenport* requirement, because he cannot show that he was convicted of a crime of which he was innocent, thus there was no miscarriage of justice. (Doc. 46, pp. 17-21).

Robbins is correct that the indictment did not allege that he knew he was a convicted felon at the time he possessed the firearm. This was consistent with Eighth Circuit precedent at the time. *See United States v. Kind*, 194 F.3d 900, 907 (8th Cir. 1999) (government was not required to prove that Section 922(g) defendant knew of his disabling status). Robbins argues that he meets the third prong of the Davenport requirements because the change in law represented by *Rehaif* "reduces [his] statutory maximum sentence below the imposed sentence." (Doc. 39, p. 4). But cases following the *Rehaif* decision make clear that this Court can and should consider other evidence in the record to determine whether it establishes the knowledge element set forth in *Rehaif*. *See, e.g., United States v. Maez*, 960 F.3d 949 (7th Cir. 2020); *United States v. Williams*, 946 F.3d 968, 973-74 (7th Cir. 2020).

Respondent points out that Robbins pled guilty to the felon-in-possession offense and agreed

13

with the factual basis for the plea. That factual basis is reflected in the transcript of the change of plea hearing on February 25, 2011, during which Robbins acknowledged that he had been convicted of three felonies (the two Minnesota assaults and the New Mexico drug trafficking). (Doc. 46, pp. 2-3, 18-19; Doc. 54, pp. 3-4).[10] Robbins further admitted in a written statement submitted to the officer preparing his Presentence Investigation Report (PSR), with his attorney present, that he possessed a firearm and that he is "a person who's not supposed to carry a firearm because of my convictions." (Doc. 46, pp. 3, 18-21; PSR, Doc. 12-1, p. 6). The PSR also reflected that Robbins had been convicted of a total of seven felonies and had served more than one year in prison for five of those convictions. (Doc. 46, pp. 3-4; Doc. 12-1, pp. 9-12).

This evidence of record demonstrates that there is no doubt that Robbins had knowledge of his felon status at the time of his plea. Thus, if the *Rehaif* standard had applied at the time of Robbins's conviction, ample proof existed to show that he knew he was in the category of persons who were prohibited from possessing a firearm at the time of his offense. *See Rehaif*, 139 S. Ct. at 2200; *Maez*, 960 F.3d at 967 (evidence including defendant's stipulation of previous felony conviction permitted jury to infer beyond a reasonable doubt that defendant knew he was a felon); *Benson v. Marske*, No. 19-cv-644, 2019 WL 6683508, at *2 (W.D. Wisc. Dec. 6, 2019) (habeas petitioner did not deny he knew he had been convicted of a felony at the time he possessed a firearm and in fact stipulated he was a felon). Robbins therefore cannot show that his conviction or sentence for being a felon in possession of a firearm represents a "miscarriage of justice" that would entitle him to habeas relief in light of the *Rehaif* opinion, and this claim fails.

## CONCLUSION

For these reasons, Kendrick Lee Robbins's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Docs. 1, 39) is **DENIED**, and this action is **DISMISSED** with prejudice. The Clerk of

---

[10] Both parties quote from pages 25-26 of the Transcript of Change of Plea. That transcript was not filed in the record in this case, but the Court accepts the parties' representations of its contents.

Court is **DIRECTED** to enter judgment accordingly.

If Robbins wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1)(B). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Petitioner plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

It is not necessary for Petitioner to obtain a certificate of appealability from this disposition of his Section 2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**

**DATED:  July 2, 2020**

                                                                                 **NANCY J. ROSENSTENGEL**
                                                                                 **Chief U.S. District Judge**